UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TYSHAWN SIMMONS,
        Petitioner,

                   DECISION AND ORDER

-vs-

                   13-CR-6025 (CJS)
UNITED STATES OF AMERICA,      19-CV-6783 (CJS)
        Respondent.
_____

## I. INTRODUCTION

On December 2, 2016, Petitioner Tyshawn Simmons entered a guilty plea to one count of murder while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A). Plea Agreement, Dec. 2, 2016, ECF No. 575. In the plea agreement, both Simmons and the government agreed that a sentence of 330 months' imprisonment was appropriate, and Simmons waived his rights to appeal and to collaterally attack his sentence. Plea Agreement at ¶ 11, 18–19. The Court accepted the agreement, and sentenced Simmons accordingly. J., Apr. 7, 2017, ECF No. 629.

Now before the Court is Simmons' application under 28 U.S.C. § 2255 to vacate his sentence, in which he attacks the validity of his conviction, and maintains that he received constitutionally deficient legal counsel from both trial and appellate counsel. Mot. to Vacate, Oct. 17, 2019, ECF No. 684; Supplement, Dec. 9, 2019, ECF No. 688. For the reasons set forth below, Simmons' application [ECF No. 684] is denied.

## II. BACKGROUND

In September 2014, a third superseding indictment was filed against Tyshawn Simmons charging nine offenses: narcotics conspiracy, possession of a firearm in

1

furtherance of drug trafficking, retaliation against a witness, two counts of possession and discharge of a firearm in furtherance of a crime of violence, witness intimidation, possession of cocaine base with intent to distribute, possession of marijuana with intent to distribute, and murder while engaged in drug trafficking. 3d Indict., Sept. 9, 2014, ECF No. 362. After litigating several pre-trial issues, Simmons appeared before the Court on December 2, 2016, to enter a guilty plea to the single charge of murder while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A). Plea Hearing Transcript (Plea Tr.), Mar. 3, 2017, ECF 600.

The Court engaged Simmons in a lengthy colloquy prior to accepting his plea. Consistent with Fed. R. Crim. P. 11(b), the Court sought to ensure, among other things, that Simmons: had reviewed the plea agreement with defense counsel (Plea Tr. at 5:21–6:11), was satisfied with counsel's advice and representation (Plea Tr. at 6:15–18), understood the maximum penalties to which he would be subject (Plea Tr. at 7:19–14:12), understood that he was waiving his rights to a direct appeal and collateral attack (Plea Tr. at 15:3–22), and understood the rights that he was giving up by pleading guilty instead of going to trial (Plea Tr. beginning at 17:10).

In addition, there was a lengthy discussion during the plea hearing of the elements that the government would have had to prove at trial and the factual basis for Simmons' plea. The Plea Agreement indicated that if the case went to trial, the government would be required to prove beyond a reasonable doubt the following three elements: (1) that Simmons was engaged in a conspiracy to distribute and possess with the intent to distribute cocaine base, and that 280 grams or more of cocaine base was reasonably foreseeable as being within the scope of the conspiracy; (2) that Simmons intentionally

2

killed, caused the intentional killing of, or aided in the killing of the victim; and (3) that the killing "occurred because of and as part of [Simmons]' engaging in or working in furtherance of the drug distribution conspiracy . . . ." Plea Agreement at ¶ 4.

Initially, Simmons agreed that "the killing of [the victim] did occur because of and as part of [Simmons'] engaging in the drug conspiracy . . . ." Plea Tr. at 35:14–19. However, following his admission to shooting and killing the victim, Simmons stated that the killing "wasn't because I thought he got me robbed or because he was cooperating. I killed him on [a] whole other dispute . . . . It was about marijuana." Plea Tr. at 41:7–43:20. The government expressed concern regarding this statement, because it called into question whether Simmons' admissions would satisfy the requirement that the killing be related to the drug conspiracy involving 280 grams or more of cocaine base. Plea Tr. at 45:4–23.

After the Court reiterated that "there has to be some tie in, . . . some connection between the murder . . . and the drug conspiracy" involving cocaine base, Simmons affirmed that the link to the cocaine base conspiracy was that he killed the victim because he was trying to help one of his co-conspirators who owed the victim money.[1] Plea Tr. 46:16–19; 56:8–17 (referencing *United States v. Aguilar*, 585 F.3d 652, 661–62 (2d Cir.

---

[1] In addition to a lengthy discussion on the record, the parties also agreed to a change in the language of the "Factual Basis" recited in the plea agreement. The agreement originally stated that "The defendant murdered Adams because the defendant believed Adams had cooperated with police against the defendant and/or was planning to do so. The defendant also believed that Adams was responsible for the defendant getting robbed of thousands of dollars in cash in California earlier in the year when the defendant went to California to purchase cocaine there." Plea Agreement at ¶ 5(e) (including text that was crossed-out after revision). Following the discussion on the record between the parties, this paragraph was changed to read: "The defendant murdered Adams, *at least in part*, because the defendant believed Adams had cooperated with police against the defendant and/or was planning to do so. The defendant also *was trying to help Franklin Brock, Jr., a coconspirator who owed money to Adams for marijuana previously supplied*." Plea Agreement at ¶ 5(e) (amended text emphasized by the Court). These changes were initialed by all parties to the agreement to indicate acceptance.

2009)). The Court then accepted Simmons' guilty plea to one count of murder while engaged in drug trafficking in violation of 21 U.S.C. § 848(e)(1)(A). Plea Tr. 58:9–17.

At sentencing, the Court noted its acceptance of the plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, and sentenced Simmons to 330 months in prison and 5 years of supervised release. Sentencing Tr., 15:1–6, May 26, 2017, ECF No. 652. Simmons appealed the sentence, but appellate counsel was granted leave to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and the appeal was dismissed on the basis of Simmons' waiver of appeal rights in the plea. Mandate, Nov. 2, 2018, ECF No. 670. Simmons now maintains that the Court should vacate his sentence because his plea was invalid, and he received constitutionally deficient counsel at the trial and appellate level.

## III. LEGAL STANDARD

A federal prisoner may move the district court to vacate, set aside, or correct his sentence if it "was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a). However, the relief permitted under § 2255 is narrowly limited. *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *United States v. Addonizio*, 442 U.S. 178, 184 & n. 11 (1979)). To prevail on his or her motion, the prisoner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bokun*, 73 F.3d at 12 (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The scope and nature of the hearing is within the discretion of the district court, and the judge who tried the underlying proceedings is not required to hold a full-blown evidentiary hearing on a § 2255 motion where written submissions are sufficient to properly resolve the factual and legal issues. *Raysor v. United States*, 647 F.3d 491, 494–95 (2d Cir. 2011) (citations omitted); *see also Sehgal v. United States*, 704 F. App'x 23, 24 (2d Cir. 2017) (citing *Puglisi v. United States*, 586 F.3d 209, 214 (2d Cir. 2009)).

### IV. DISCUSSION

Because Simmons is proceeding *pro se*, the Court construes his submissions liberally, and interprets them to raise the strongest arguments that they suggest. *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotation marks omitted). Yet even after liberally construing the submissions, the Court finds that the parties' written submissions are sufficient to properly resolve the issues, and that Simmons' § 2255 application is without merit.

Simmons maintains that he is entitled to relief under 28 U.S.C. § 2255 because his defense counsel provided constitutionally deficient representation when he "coerced" Simmons into pleading guilty to a defective charge that violated the Double Jeopardy clause (Mot. to Vacate at 22–25), and failed to object to a plea agreement that was missing both an essential element of the charge upon which Simmons was convicted (Mot. to Vacate at 26–29) and an adequate factual basis (Mot. to Vacate at 30–33).

Simmons also maintains that his appellate counsel was ineffective for refusing to challenge Simmons' defective guilty plea. Mot. to Vacate at 34–39. Additionally, Simmons has submitted a Supplement to his original petition in which he argues that his sentence was void because this Court lacked subject matter jurisdiction over his case, the indictment was defective, the statute of conviction was unconstitutionally ambiguous, and the United States Probation Department miscalculated his criminal history points while calculating his sentencing guideline range. Supplement, Dec. 9, 2019, ECF No. 688.

Simmons' Supplemental Brief

As the government notes in its opposition papers, Simmons' Supplement in this action mirrors in several respects the arguments raised in the *pro se* brief he filed on direct appeal. Mem. in Opp., 9, Mar. 11, 2020, ECF No. 697; *see also* Pro Se Anders Resp., *United States v. Simmons*, 2d Cir. Docket # 17-1007, May 21, 2018, ECF No. 74. As the government also correctly points out, it is well established that a § 2255 petition cannot be used to relitigate questions which were raised and considered on direct appeal, unless those questions rest upon a different legal "ground" for relief than the one previously raised. *United States v. Pitcher*, 559 F.3d 120, 123 (2d Cir. 2009) (internal citations omitted). After careful review of both the Supplement and Simmons' *pro se* brief on appeal, the Court finds that Simmons' Supplement has not identified legal grounds for relief different from those grounds raised in his *pro se* brief on appeal. Consequently, he is barred from relitigating those issues in the instant application.

Moreover, even if Simmons were not procedurally barred from raising these issues, the Court finds that they are without merit. First and most relevant, Simmons challenges the Court's subject matter jurisdiction to hear the underlying criminal case in

which he was convicted. Relying in part on citations of old Supreme Court cases taken out of context, as well as the Supreme Court's ruling in *United States v. Lopez*, 514 U.S. 549 (1995), Simmons seems to maintain that his conviction in federal court was void because the federal government has "nothing approaching a police power" to prosecute local drug crimes, and because state jurisdiction over the "place of the crimes" remains "complete and perfect." Suppl. at 2–6.

However, as the Second Circuit has stated, "Congress has made specific findings and declarations . . . . that local narcotics activity substantially affects interstate commerce . . . . [and] concerns an obviously economic activity, drug trafficking." *United States v. Walker*, 142 F.3d 103, 111 (2d Cir. 1998) (internal citations omitted). Therefore, it is well-settled that "Congress was within its power under the Commerce Clause [in Art. I, § 8 of the U.S. Constitution] in enacting 21 U.S.C. § 841(a)(1) and § 848(e)(1)(A) . . . ." *Id*. *See also United States v. Genao*, 79 F.3d 1333, 1337 (2d Cir. 1996) (rejecting a constitutional challenge to 21 U.S.C. § 848(e)(1)(A) because there was a "reasonable finding by Congress" that local narcotics activity substantially affects interstate commerce).

Second, Simmons maintains that his indictment was defective for failing to allege all of the essential elements. Supplement at 6–8. Yet because he entered a plea of guilty, Simmons can only attack his conviction by establishing "that the face of the indictment discloses that the count or counts to which he pleaded guilty failed to charge a federal offense." *United States v. Kumar*, 617 F.3d 612, 620 (2d Cir. 2010) (citing *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir.1987)). Simmons has not met this burden. The third superseding indictment clearly reads, in pertinent part, that "the defendant, TYSHAWN SIMMONS . . . while engaged in an offense punishable under [21 U.S.C. §] 841(b)(1)(A),

7

. . . did intentionally kill and cause the intentional killing of Ryan Adams, and such killing resulted." See *Aguilar*, 585 F.3d at 657–58 (affirming that one way "a § 848(e)(1)(A) offense is committed [is] when a person kills while engaging in an offense punishable under section 841(b)(1)(A) . . . or conspiring to do so.") (internal quotation marks omitted).

Third, Simmons maintains that the language of the requirement in 21 U.S.C. § 848(e)(1)(A) that the defendant be "engaged in" an offense punishable under § 841(b)(1)(A) is unconstitutionally ambiguous. Supplement at 9–19. After consideration of the arguments and applicable caselaw, the Court finds the explanation of the Fourth Circuit to be persuasive. As the Fourth Circuit states, "§ 848(e)(1)(A) is not ambiguous. Nor is it vague. It states simply that one who intentionally kills another while 'engaging in an offense punishable under section 841(b)(1)(A) . . . may be sentenced to death.'" *United States v. Hager*, 721 F.3d 167, 183 (4th Cir. 2013). Although Simmons here makes much of the "clear statement rule," the distinction between "kingpins" and "underlings," and his convoluted reading of select appellate cases interpreting § 848(e), the law in the Second Circuit is clear that "a killing is committed by 'a person engaging in' a qualifying drug conspiracy within the meaning of 21 U.S.C. § 848(e)(1)(A) if (a) one motive for that killing was related to the drug conspiracy, or (b) that person's position in or control over the conspiracy facilitated the commission of the murder . . . ." *Aguilar*, 585 F.3d at 662.

Lastly, Simmons states that he is entitled to relief because the Court accepted a criminal history rating that was miscalculated under the applicable Sentencing Guidelines, and ended up giving him two extra points. Suppl. at 19–20. Simmons admits that the two extra points would not have affected his sentence, but argues that he ought not to have received two points for a sentence upon which he only served one work-weekend.

Supplement at 20. Given the specific circumstances of this case, the alleged miscalculation does not rise to the level of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Bokun*, 73 F.3d at 12 (internal citation omitted).

Ineffective Assistance of Trial Counsel

Simmons maintains that his trial counsel coerced him into accepting a fundamentally defective plea agreement that violated the Double Jeopardy clause, failed to ensure that he understood the nature of the charges against him, and failed to ensure the plea agreement contained an adequate factual basis for Simmons' conviction. Each of these arguments is without merit.

*Legal Principles*

The Sixth Amendment guarantees a criminal defendant the right to "reasonably effective assistance" of counsel. To establish ineffective assistance of counsel, a defendant must satisfy the two-prong test outlined in *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant's failure to satisfy one prong of this two-pronged test relieves the court of any requirement to consider the other prong. *Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991).

First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" under the "prevailing professional norms." *Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (citing *Strickland*, 466 U.S. at 688). When applying this first *Strickland* prong, courts must be mindful of the variety of approaches effective attorneys might employ when dealing with a particular set of facts, and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

9

professional assistance." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008) (quoting *Strickland*, 466 U.S. at 689). Hence, the Court must "consider the circumstances counsel faced at the time of the relevant conduct and . . . evaluate the conduct from counsel's point of view." *Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 689).

Second, the defendant must demonstrate he was prejudiced by the ineffective conduct. *Strickland* at 687–88. That is, he must show there is a "reasonable probability" that *but for* counsel's error, the outcome of the proceeding would have been different. *Strickland* at 694. In evaluating prejudice, we look to the cumulative effect of all of counsel's unprofessional errors. *Gersten v. Senkowski*, 426 F.3d 588, 611 (2d Cir. 2005).

The Second Circuit has consistently held that a "defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (citations omitted). Nevertheless, even where – as in the present case – a defendant entered into a plea agreement involving a waiver of collateral attack, the defendant may challenge that waiver on the grounds that "the plea agreement was not knowing and voluntary . . . because the advice he received from counsel was not within acceptable standards." *Parisi*, 529 F.3d at 138. In addition, ineffective assistance of counsel claims may be raised in a § 2255 petition even though they were not raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504–05 (2003).

*Application*

Because each of Simmons' arguments regarding the ineffectiveness of his trial counsel is predicated on Simmons' misunderstanding of the law, he fails to demonstrate that his counsel's performance fell below an objective standard of reasonableness.

First, Simmons maintains that his counsel "coerced" him into entering a guilty plea to a violation of 21 U.S.C. § 848 even though he had not pled guilty to a predicate conspiracy offense under § 846, and despite the fact that it violated the "Double Jeopardy clause." Mot. to Vacate at 24. In making his argument, Simmons cites to *Rutledge v. United States*, 517 U.S. 292 (1996), which was an appeal by a defendant convicted of both conspiring to distribute cocaine under § 846, and of conducting a continuing criminal enterprise under § 848(a) for organizing or supervising the cocaine trafficking operation. The Supreme Court held that conspiracy to distribute controlled substances under § 846 is a lesser included offense of a continuing criminal enterprise offense under § 848, and that a conviction for conspiracy to distribute controlled substances, in addition to the continuing criminal enterprise conviction, amounted to an improper, cumulative, second punishment. *Rutledge*, 517 U.S. at 307.

Yet the holding in *Rutledge* is irrelevant to the present case. Whereas the defendant in *Rutledge* was convicted and sentenced for both a violation of § 846 *and* § 848(a), Simmons was convicted and sentenced only for a violation of § 848(e)(1)(A). Although the *Rutledge* decision demonstrates that § 846 is lesser included offense of a violation of § 848(a), which penalizes engagement in a "continuing criminal enterprise" as defined in § 848(c), § 846 is not necessarily a lesser included offense of a violation of § 848(e). § 848(e)(1)(A) penalizes an individual who either "engag[es] in or work[s] in

11

furtherance of a continuing criminal enterprise" as defined in § 848(c), *or* an individual "engaging in an offense punishable under [21 U.S.C. §] 841(b)(1)(A) . . . ." *See Aguilar*, 585 F.3d at 657–58 (distinguishing between an § 848(e)(1)(A) offense "committed when a person kills while 'working in furtherance of a continuing criminal enterprise,'" and an § 848(e)(1)(A) offense "committed when a person kills while 'engaging in an offense punishable under section 841(b)(1)(A) . . . .'"). To demonstrate that Simmons was guilty of § 848(e)(1)(A), the government could either allege the elements of a conspiracy under § 846, or that he was engaged in an offense punishable under § 841(b)(1)(A). Clearly, the government elected to pursue a charge under the latter alternative, and the representation of Simmons' trial counsel was not deficient in recognizing it as a valid charge.

Next, Simmons maintains that his trial counsel failed to ensure that Simmons understood the elements of the charges against him. Mot. to Vacate at 27. Specifically, he states that because the Double Jeopardy clause's prohibition of his conviction on the predicate conspiracy charge "eliminated the possibility of § 841(b)(1)(A) being triggered," the government could not establish a necessary element of a conviction under § 848(e)(1)(A). As discussed in the previous paragraph, however, the government did not need – nor did it attempt – to convict Simmons of a conspiracy charge in order to convict him under § 848(e)(1)(A). Rather, the government was only required to establish that Simmons was engaged in an offense punishable under § 841(b)(1)(A) when he committed the murder.

Finally, Simmons argues that his trial counsel was deficient for failing to recognize that the plea agreement lacked an adequate factual basis demonstrating a "substantive connection" between Simmons' murder of Ryan Adams and his engagement in drug trafficking in violation of § 841(b)(1)(A). Mot. to Vacate at 31–33. Simmons' assertions in this regard are without basis in the record. During the plea hearing, as the Court examined Simmons pursuant to Rule 11 to ensure his understanding of the elements the government would have to prove against him at trial, defense counsel halted the colloquy to make clear that Simmons was not pleading to murdering Adams "in furtherance" of his drug trafficking, but rather that he was pleading to murdering Adams while "engaged in" it. Plea Tr. at 20:2–8. The "engaged in" language, as both the Court and defense counsel recognized, is what was charged in the indictment. Plea Tr. at 20:20–21:3.

It was precisely this clarification that led to the extended discussion described above between the Court, defense counsel, Simmons and the government to clarify the factual basis of the guilty plea. Hence, a close review of the record indicates that Simmons' trial counsel possessed both a keen understanding of the nuances of a conviction under § 848(e)(1)(A), and that the factual basis for Simmons' plea involved the murder of Adams to help his co-conspirator, rather than directly in furtherance of the cocaine trafficking operation he was engaged in. Plea Tr. at 48:10–25.

Accordingly, the Court finds that Simmons has failed to demonstrate that the representation provided by his trial counsel fell below an objectively reasonable standard. Because the Court finds that Simmons was unable to satisfy the reasonableness prong of the *Strickland* analysis, it need not consider the prejudice prong.

Ineffective Assistance of Appellate Counsel

In addition, Simmons maintains that his appellate counsel rendered ineffective assistance by refusing to challenge the validity of his plea on the grounds that it lacked an adequate factual basis. Mot. to Vacate at 34–38.

*Legal Principles*

A claim for ineffective assistance of appellate counsel is evaluated by the same standard as is a claim of ineffective assistance of trial counsel. *Muldrow v. Herbert*, 299 F. Supp.2d 166, 169 (W.D.N.Y. 2004). To demonstrate the ineffectiveness of appellate counsel, "it is not sufficient for the defendant to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citation omitted). Rather, a petitioner may only establish constitutionally inadequate performance by showing that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. *Id*.

*Application*

As indicated above, Simmons' arguments regarding the factual basis for his plea agreement are without merit. The Supreme Court has made clear that "neither paid nor appointed counsel may . . . consume the time and the energies of the court or the opposing party by advancing frivolous arguments. An attorney, whether appointed or paid, is therefore under an ethical obligation to refuse to prosecute a frivolous appeal." *McCoy v. Ct. of Appeals of Wisconsin, Dist. 1*, 486 U.S. 429, 436 (1988). Further, in *Anders v. California*, 386 U.S. 738 (1967), the high court required that an appellate counsel's motion to withdraw be accompanied by a brief referring to anything in the record

which may support an appeal to provide a basis for determining whether appointed counsel have fully performed their duty to support their clients' appeals to the best of their ability. *Anders*, 386 U.S. at 744. The fact that Simmons' appellate attorney's *Anders* brief was submitted to, reviewed by, and accepted by the Second Circuit indicates that the circuit court was satisfied with counsel's performance.

Based on this Court's searching review of the record, and the Second Circuit's acceptance of counsel's *Anders* brief, the Court finds that Simmons has failed to demonstrate that appellate counsel's performance fell below an objective standard of reasonableness. Because the Court finds that Simmons was unable to satisfy the first prong of the *Strickland* analysis for his ineffective assistance of appellate counsel claim, it need not consider the second prong.

## CONCLUSION

Having carefully examined the record, including Simmons' supplement to his original application [ECF No. 688], the Court finds that an evidentiary hearing is unnecessary because the written submissions are sufficient to resolve the factual and legal issues that Simmons presents. Accordingly, it is hereby ORDERED that Petitioner Tyshawn Simmons' motion to vacate under 28 U.S.C. § 2255 [ECF No. 684] is denied in all respects.

Petitioner having not made a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to

proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

    SO ORDERED.

Dated:    December 6, 2022
             Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge